## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| **RICHARD L. PFEIFFER** ) | |
| **HATTIE B. PFEIFFER,** ) | |
| ) | Bankruptcy No. 13-01253 |
| Debtors. ) | |
| ) | |
| **RICHARD L. PFEIFFER,** ) | |
| ) | |
| Plaintiff, ) | Adversary No. 13-09091 |
| ) | |
| **v.** ) | |
| ) | |
| **KEELAN M. DRISCOLL,** ) | |
| ) | |
| Defendant. ) | |

### ORDER AND MEMORANDUM

Debtors brought this adversary proceeding to seek sanctions for Defendant's automatic stay violation. Keelan M. Driscoll obtained a judgment against Debtors before this bankruptcy and was in the process of garnishing Richard Pfeiffer's wages when Debtors filed bankruptcy. The garnishment did not immediately cease following the bankruptcy filing as the automatic stay requires. The Court held a trial on the matter on August 19, 2014. Steven G. Klesner appeared on Debtors' behalf. Jessica L. Hlubek and William K. Shafer appeared on Defendant's behalf. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

Debtors argue that Defendant willfully violated the automatic stay by failing
to stop a continuing garnishment of Richard Pfeiffer's wages.  Debtors request
actual damages for mental anguish, attorney fees, late fees, and lost wages to
attend trial.  Defendant admits that he violated the automatic stay, but argues he
did not do so willfully.  Defendant thus argues no damages are warranted.  Further,
Defendant argues that Debtors rejected reasonable settlement offers in bad faith
before trial.  As a result, Defendant requests that Debtors cover the costs of
attorney fees related to this trial.

The Court concludes that Debtors have shown Defendant's willful violation
of the automatic stay.  Debtors have also shown modest actual damages.  Debtors
did not, however, show that punitive damages are warranted in this case.  The
Court also rejects Defendant's claim for costs related to defending this adversary.

## FINDINGS OF FACT

Debtors filed this bankruptcy on July 30, 2013.  Defendant held a judgment
against Debtors and was garnishing Richard Pfeiffer's wages at the time of the
bankruptcy filing.  Defendant obtained this judgment acting pro se.

The Clerk of Court for Iowa County released $965.73 of the garnished
wages to Defendant on or around August 20, 2013—three weeks after Debtors'
bankruptcy filing.  The Clerk also still held $184.41 of garnished wages after that

2

payment to Defendant.  Debtors scheduled both of these garnished amounts as exempt wages under Iowa Code § 627.6(10).  Defendant cashed the garnishment check and put the funds in his personal account rather than returning them to Debtors.

Defendant originally filed the paperwork to garnish Richard Pfeiffer's wages with the Iowa County Clerk on March 29, 2013.  Defendant paid the sheriff's fees related to the garnishment on June 7, 2013.  Under the Iowa County Clerk's normal practice, Defendant only had to fill out paperwork once, and then the Iowa County Clerk's office would automatically condemn the garnished funds as they arrived.  As a rule, this process continues until the debt is paid or other garnishment limits are reached.  When the garnishee files for bankruptcy, the Iowa County Clerk's office is normally notified and garnishments cease.  However, the Clerk did not receive notice before the distribution of the $965.73 in dispute here.

Although Defendant was aware of the bankruptcy, he admits he did not take any affirmative action to stop the garnishments or even get in touch with the Iowa County Clerk.  Defendant testified that he did not realize that he needed to do anything to stop the garnishment.  He assumed the garnishment would stop on its own.  Defendant is a relatively inexperienced creditor and, until this adversary proceeding, was navigating the legal system pro se.  He was, at the time, generally unfamiliar with any bankruptcy procedures, including the automatic stay and its

implications.  Defendant points out that he also did not contact Debtors to attempt to collect on the debt after Debtors filed for bankruptcy.

Defendant received a letter from Debtors' counsel on or about September 18, 2013.  The letter stated that because Defendant retained the garnished wages after the bankruptcy filing, he had violated the automatic stay.  The letter also incorrectly stated that Defendant had filed an application to condemn funds after Debtors' bankruptcy filing.  The letter demanded the immediate repayment of the garnished wages.  The letter also had a case attached.  Debtors' counsel intended the case to illustrate the negative effects of violating the automatic stay, including the possibility of punitive damages.

Defendant testified that this letter confused him.  He thought that it seemed odd that the letter demanded that the money be returned to the Debtor, instead of to the Court or to a Trustee.  Defendant testified that he did not think the attached case applied to him because that creditor's actions were much more egregious.

Defendant also suspected that the letter was fabricated because it indicated the Defendant had filed an application to condemn funds in August, when in fact, he did not.  Defendant testified that he spoke with non-lawyer friends, and they also questioned the letter's legitimacy.  He did not speak with an attorney about the letter at that time.  The Defendant only retained counsel after Debtors filed this

adversary complaint.  This was approximately two months after receiving the letter

from Debtors' counsel.

Defendant's attorney, Mr. Shafer, spoke with Debtors' attorney on or about

December 18, 2013.  Mr. Shafer believed Debtors' attorney stated that he would

recommend a settlement for $1,500 to his clients.  Mr. Shafer sent Debtors'

attorney a letter confirming this discussion and noting his client would "accept" the

$1,500 offer.  Debtors' counsel responded via e-mail.  He pointed out that he told

Mr. Shafer that the lowest amount he would recommend would be $1,500, and that

he had not "offered" to settle for that amount.  He further noted that he had spoken

to Debtors in the intervening time, and they said they would settle for $3,000

instead.  Defendant declined the offer.  Because settlement efforts were not fruitful,

Defendant returned the garnished funds of $965.73 to Debtors' counsel on

December 27, 2013.

## CONCLUSIONS OF LAW

Plaintiff brought this adversary to request sanctions for Defendant's

violation of the automatic stay.  Defendant admits that he violated the automatic

stay by failing to affirmatively stop his wage garnishments.  Defendant argues that

damages are not warranted, however, because his violation was not willful.

Defendant also argues that if the Court awards damages at all, those damages

should be significantly less than Debtors have requested.  Finally, Defendant

argues that the entire adversary is frivolous and that Defendant should be awarded

costs and attorney fees relating to defending this adversary.

## I.    Defendant Willfully Violated the Automatic Stay.

The United States Bankruptcy Code prohibits creditors from engaging in

"any act to create, perfect, or enforce against property of the debtor any lien to the

extent that such lien secures a claim that arose before the commencement of the

case under this title."  11 U.S.C. § 362(a)(5) (2013).  Upon the filing of the

bankruptcy petition, creditors cannot enforce any judgment that arose before the

bankruptcy filing.  Id. § 362(a)(2).  Section 362(k) allows the Debtors to seek

damages for willful violations of the automatic stay, including actual and punitive

damages.  Id. § 362(k).  A debtor must demonstrate, by a preponderance of the

evidence "that a creditor acted willfully in violation of the stay and that an injury

resulted from that conduct."  Bugg v. Gray (In re Gray), 519 B.R. 767, 774 (B.A.P.

8th Cir. 2014).

In order to recover for damages, the Debtors must show "(1) the creditor

violated the automatic stay; (2) the violation was willful; and (3) the debtor was

injured by the violation."  Marino v. Seeley (In re Marino), 437 B.R. 676, 678

(B.A.P. 8th Cir. 2010).  A violation is willful when "the creditor acts deliberately

with knowledge of the bankruptcy petition."  Knaus v. Concorida Lumber Co., Inc.

(In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989).  If the creditor is notified of the

bankruptcy proceeding by any means, then that creditor has knowledge of the

bankruptcy petition.  Walters v. Sherwood Mun. Court (In re Walters), 219 B.R.

520, 526 (Bankr. W.D. Ark. 1998).  A violation is still "willful" even where the

creditor does not have the specific intent to violate the automatic stay.  In re

Dencklau, 158 B.R. 796, 800 (Bankr. N.D. Iowa 1993).

　　　A creditor must take affirmative action to return garnished funds if the

creditor receives those funds post-petition.  In re Forkner, No. 10-01585, 2010 WL

5462543, at *5 (Bankr. N.D. Iowa Dec. 22, 2010).

> Section 362(a) not only imposes a stay of proceedings against the
> debtor, it creates an affirmative duty on a creditor to cease actions
> which may violate the stay.  Indeed, a creditor is required to act
> affirmatively to *reverse* actions which, if carried out, would violate
> the automatic stay.  If, for example, a wage order or garnishment is in
> place prepetition, the creditor is under an affirmative duty to refuse
> the funds as well as reverse, suspend or halt the garnishment.

In re Walters, 219 B.R. at 526; see also In re Forkner, 2010 WL 5462543, at *4–*5

(citing cases from the First, Tenth, and Eleventh Circuit for support); Franchise

Tax Bd. v. Roberts (In re Roberts), 175 B.R. 339, 343–44 (B.A.P. 9th Cir. 1994)

(also citing cases that support the "affirmative duty to stop garnishment

proceedings when notified of the automatic stay").

　　　Here, Defendant admitted to violating the automatic stay.  Defendant also

admits to receiving notification of the bankruptcy proceeding and taking no action

to prevent garnishment.  In addition, Defendant admits he did not return the funds

until he retained counsel and he was advised to do so.  This occurred several

months after the bankruptcy filing.  All of this establishes that Defendant willfully

violated the automatic stay under the above standards.  In particular, the violation

became knowing and willful when Defendant failed to take affirmative action to

stop the garnishment and return the funds.  The fact that Defendant did not realize

that he needed to take steps to stop the garnishment is not relevant to this portion

of the analysis.

## II.    Debtors are Entitled to Damages.

To recover damages under § 362(k), Debtors must show how they were

injured by the automatic stay violation.  11 U.S.C. § 362(k) ("[A]n individual

injured by any willful violation of a stay provided in this section **shall** recover

actual damages . . . and . . . **may** recover punitive damages." (emphasis added)).

Debtors argue that they suffered damages in the form of mental anguish, attorney

fees, court costs, lost wages, and costs related to late fees.  Debtors also argue that

they should receive punitive damages.  Defendant argues that if Debtors are

entitled to any damages, then those damages should be greatly limited because

Debtors have not met the burden on all of the claims for damages.

### A. Late Fees, Mental Anguish, and Lost Wages

Debtors stated that they incurred late fees and disconnect costs for utility and

other bills because they did not timely receive the garnished funds.  Debtors argue

8

that having the garnished funds would have allowed Debtors to avoid these fees and the stress that came with them. While Debtors presented Richard's testimony to establish the fees paid, he did not know how much these fees totaled. The Court is unable to award damages where no specific amounts were identified or requested.

Richard also testified that they suffered inconvenience, stress, and aggravation from both the improper garnishment and because of Defendant's delay in returning the funds. "Emotional distress damages for automatic stay violations are available if the individual debtor puts on clear evidence establishing that significant harm occurred as a result of the violation." L'Heureux v. Homecomings Fin. Network (In re L'Heureux), 322 B.R. 407, 411 (B.A.P. 8th Cir. 2005). The Court concludes that Richard's testimony provides "clear evidence" of that emotional distress. Debtors requested $1,000 in damages for mental anguish. The Court finds that an award of $500 is appropriate here.

Richard also testified that he lost $152.10 in wages because he had to attend the trial on this matter. Richard stated that he makes $16.90 an hour, and he had to leave work for nine hours to attend trial. This testimony establishes that an award for $152.10 in lost wages is appropriate here.

A violation of the automatic stay is a serious matter. Debtors have presented sufficient evidence regarding his actual damages. As the Code requires, the Court

will award actual damages based on Richard's testimony. Debtors have thus met their burden regarding actual damages. The Court awards actual damages in the amount of $652.10.

### B. Attorney Fees and Costs

Debtors argue that the Court should also award attorney fees and costs incurred to bring this adversary. Defendant argues that attorney fees and costs should only be awarded for the period of time before Defendant made a reasonable settlement offer to Debtors. Defendant believes that occurred on December 18, 2013, and all fees and costs after that point were unnecessary.

Defendant has also argued that Debtors should be liable to Defendant for his costs and attorney fees because Debtors forced Defendant to defend an unnecessary lawsuit. The Court rejects this argument and awards attorney fees and costs to Debtors.

### i.    Debtors' Attorney Fees

"The court also has an obligation to review attorney fees under § 352[(k)] for reasonableness, taking into account the necessity of attorney's services in reacting to automatic stay violations." In re Joens, Bankr. No. 03-02077, 2003 WL 22839822, *3 (Bankr. N.D. Iowa Nov. 21, 2003); see also Rosengren v. GMAC Mortg. Corp., No. CIV. 00-971(DSD/JMM), 2001 WL 1149478, *5 (D. Minn. Aug. 7, 2001) (explaining that the reasonableness standard is "born of the courts'

10

reluctance to foster a 'cottage industry' built around satellite fee litigation"

(quoting In re Robinson, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998))).  The attorney

fees requested should be reasonably related to the disputed amount.  Harris v.

Memorial Hosp. (In re Harris), 374 B.R. 611, 616 (Bankr. N.D. Ohio 2007).

    The duty to mitigate damages found in traditional contract and tort law is

also present and applicable in proceedings for damages under § 362(k).  Hutchings

v. Ocwen Fed. Bank (In re Hutchings), 348 B.R. 847, 903 & n.28 (Bankr. N.D.

Ala. 2006) (citing cases to support mitigation requirement); Emmons v. Emmons

(In re Emmons), 349 B.R. 780, 792–93 (Bankr. W.D. Mo. 2006).  Some circuits

consider the rejection of a reasonable settlement offer as synonymous with a

failure to mitigate damages.  In re Harris, 374 B.R. at 616 (citing In re Esposito,

154 B.R. 1011, 1015–16 (Bankr. N.D. Ga. 1993) ("A debtor is also under a duty to

mitigate their damages. For attorney fees, this means that after reasonable offers of

settlement are made, any attorney fees incurred thereafter must be borne by the

debtor.").  Those circuits must also engage in an in-depth analysis of the facts

surrounding the settlement offer to determine if the offer was reasonable.  See, e.g.,

Henderson v. Auto Barn Atlanta, Inc. (In re Henderson), Bankr. No. 09-50596,

Adv. No. 09-5114, 2011 WL 183877, *7 (Bankr. E.D. Ky. May 13, 2011).

    The Eighth Circuit has not specifically adopted this as a measure to

determine whether attorney fees are reasonable.  Nevertheless, the Court believes

that an unreasonable rejection of a settlement offer can be considered as one factor in determining the reasonableness of attorney fees. In the end, this Court continues to believe that "[i]n imposing actual damages, the trial court has discretion to fashion the punishment to fit the circumstances." In re Forkner, Bankr. No. 10-01585, 2010 WL 5462543, *5 (Bankr. N.D. Iowa Dec. 22, 2010).

Richard's garnished wages that Defendant possessed wrongfully totaled $965.73. Defendant did not return the funds until December 27, 2013, approximately five months after Debtors filed bankruptcy. By that time, Debtors' attorney fees already had reached $1,100–$1,200. Debtors' attorney noted in the first letter that if the $965.73 had been returned immediately, it may have ended the matter. Defendant chose to retain the funds until a lawsuit was filed. Debtors are requesting attorney fees for bringing this sanctions action totaling $4,826.25.

Defendant suggests that he made a "reasonable" settlement offer of $1,500 on or around December 19, 2013 and that should have stopped further fees. As noted, at that time, Debtors had incurred $1,100–$1,200 of attorney fees. Defendant suggests that Debtors should have accepted his reasonable settlement offer. Defendant believes that Debtors' failure to do so should prevent any further award of fee beyond that time.

The Court declines to put much weight in Debtors' rejection of Defendant's settlement offer. The rejection of the offer at that point was not unreasonable

12

because it would not have even fully covered the accumulated attorney fees and the garnished wages. Moreover, Defendant's rejection of—or refusal to counter the $3,000 demand—pushed this case toward trial. Accordingly, the Court finds the amounts expended in trial preparation by Debtors' counsel were reasonable. They are nearly equivalent to the amounts spent by Defendant's counsel. There were significant additional fees for post-trial briefing. However, Defendant—not Debtors—requested that briefing. Thus, the Court concludes the total fees of $4,826.25 were reasonable and necessary here.

### ii.    Defendant's Attorney Fees

Defendant requests that the Court order Debtors to pay his fees for defending unnecessary litigation. Defendant has requested almost $3,000 in fees. Bankruptcy Rule 9011 prohibits parties from presenting any papers to the Court that may have an improper purpose, including "needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)(1). The Rules also allow the Court to sanction parties who violate this Rule. Fed. R. Bankr. P. 9011(c). Parties can either file a separate motion to address violation of this rule, or the Court can direct parties to show cause as to why this rule was not violated. Fed. R. Bankr. P. 9011(c)(1).

Although the Defendant references Rule 9011, sanctions were not specifically requested in a separate motion with notice and hearing as Rule 9011

13

requires.  The Court declines to bring the issue of the violation on its own

initiative, either through Rule 9011 or through § 105(a).  Moreover, the Court finds

Defendant's argument is entirely without merit.  Defendant seems to believe that

Debtors improperly rejected a fair offer of settlement and proceeded unnecessarily

to trial.  Simply stated, Debtors did not unreasonably reject a fair settlement offer

in December 2013.  The offer did not even cover fees to date, the improperly

withheld garnished funds, or other actual damages.  Accordingly, the Court

declines to award Defendant attorney fees.

### C. Punitive damages

Section 362(k) also allows the Court to award punitive damages in

"appropriate circumstances."  11 U.S.C. § 362(k).  "The cases interpreting

'appropriate circumstances' indicate . . . that egregious, intentional misconduct on

the violator's part is necessary to support a punitive damage award."  <u>United States

v. Ketelsen</u> (<u>In re Ketelsen</u>), 880 F.2d 990, 993 (8th Cir. 1989).  In evaluating

whether to award punitive damages, the court considers "the nature of the

creditor's conduct, the nature and extent of the harm to the debtor, the creditor's

ability to pay damages, the level of sophistication of the creditor, the creditor's

motives, and any provocation by the debtor."  <u>Bugg v. Gray</u> (<u>In re Gray</u>), 519 B.R.

767, 775–76 (B.A.P. 8th Cir. 2014).

14

Here, Defendant did nothing to correct the problems until five months after Debtors filed for bankruptcy.  The actual damage and fee awards cover that impropriety.  Defendant, however, did nothing to further exacerbate the harm.  He did not attempt to contact Debtors or collect on the debt owed to him after the garnishments stopped.  Debtors have provided evidence of only a limited harm that Defendant's inaction imposed on them.  Defendant is not a sophisticated creditor and has very little experience with the bankruptcy system.  Defendant also returned the funds when a settlement could not be reached.

After considering all of these factors, the Court finds that punitive damages are not appropriate in this case.  The Court recognizes that damages for automatic stay violations are meant to act as a deterrent to creditors so that violation of the automatic stay does not become a common practice.  However, it is likely enough that Defendant will have to pay Debtors' actual damages and significant attorney fees in this case.

**WHEREFORE**, the Court finds that Debtors presented sufficient evidence to show actual damages in the amount of $5,478.35, which includes attorney fees of $4,826.25.

**FURTHER**, the Court finds that punitive damages are not warranted.

**FURTHER**, the Court declines to award Defendant attorney fees under either Rule 9011 or § 105(a).

15

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:  March 17, 2015

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE